IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HYMELIA L. CRAIG )
 )
v. ) No. 3:18-0303
 )
SOCIAL SECURITY ADMINISTRATION )


To: The Honorable Aleta A. Trauger, District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record. (Docket No. 17). Defendant has filed a response (Docket No. 19) and Plaintiff has filed a subsequent reply (Docket Entry No. 20) to Defendant's response.

Upon review of the administrative record as a whole and consideration of the parties' filings, the Court recommends that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 17) be DENIED.

1

# I. INTRODUCTION

Plaintiff filed an application for DIB on August 13, 2015. *See* Transcript of the Administrative Record, Docket Entry No. 15, at 57.[1] She alleged a disability onset date of May 15, 2015. *Id*. Plaintiff asserted that she was unable to work because of back pain. AR 57-58.

Plaintiff's application was denied initially and upon reconsideration. AR 74-76, 81-82. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ David A. Ettinger on April 5, 2018. AR 31-49. The ALJ subsequently denied the claim on July 12, 2017. AR 12-27. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 20, 2018, AR 1-6, thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. *See* 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision and made the following enumerated findings based upon the record:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.     The claimant has not engaged in substantial gainful activity since May 15, 2015, the alleged onset date. (20 CFR 404.1571 *et seq*.).

***

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page.

2

3.     The claimant has the following severe impairments: lumbar degenerative disc disease; degenerative joint disease right knee; and bilateral carpal tunnel syndrome (20 CFR 404.1520(c)).

*** 

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

*** 

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she cannot climb ladders; cannot more than occasionally climb stairs, balance, stoop, kneel, crouch, or crawl; and is limited to jobs, which allow a worker to stand for up to five minutes after sitting 90 minutes.

*** 

6.     The claimant is capable of performing past relevant work as an administrative assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

*** 

7.     The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2015, through the date of this decision (20 CFR 404.1520(f)).

AR 17-21.

### III. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)

4

(citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month

5

durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

6

If the claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), cert. denied, 461 U.S. 957, 103 S. Ct. 2428. 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five -Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work as an administrative assistant, and thus concluded that Plaintiff has not been under a disability since the alleged onset date of May 15, 2015. AR 17-21.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by (1) failing to consider and give appropriate weight to the medical opinions of her treating physician, Dr. Paul R. McCombs, (2) failing to consider and give appropriate weight to the medical opinions of examining physician Dr. Lloyd Huang, and (3) failing to properly evaluate her credibility. Docket No. 18 at 8, 11, 12. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id.* at 15-16.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential

factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court addresses Plaintiff's assertion of error below.

### 1. The opinion evidence of Dr. Paul R. McCombs, III.

In order to evaluate the ALJ's apportionment of weight to the opinion evidence, an examination of Plaintiff's medical record is helpful. The record begins with a January 27, 2003 evaluation noting Plaintiff's several year history of lower back pain and complaints of bilateral lower extremity pain. AR 251. Imaging demonstrated grade III spondylolisthesis with neural foraminal narrowing and neural compression. *Id.* The evaluating physician recommended surgical intervention via lumbar fusion, which was subsequently performed by Dr. Paul R. McCombs, III, a neurosurgeon, in March 2003. AR 251, 253, 295, 520.

Plaintiff returned to Dr. McCombs on February 23, 2009 after she developed severe pain in her lower back with radiation down to her left hip and leg. AR 253. The record notes that Plaintiff "had done quite well" since her surgery and that her new pain had begun several weeks before this visit. *Id.* Dr. McCombs ordered a lumbar MRI scan that revealed "multilevel lumbar spondylosis, which appears most advanced at L5-S1 where there is severe bilateral foraminal stenosis." AR 253, 282. The abnormal signal within the L5-S1 disc space was attributed to "spondylitic/postoperative sequelae." AR 282. As a result, Dr. McCombs recommended an epidural steroid injection. AR 255.

Dr. McCombs next saw Plaintiff on August 8, 2011, approximately two and a half years after her last visit. AR 295. Plaintiff reported increasing back and left leg pain over the past couple of years. *Id.* Dr. McCombs ordered a lumbar MRI scan to reevaluate Plaintiff, which revealed

"[g]rade 2 L5-S1 spondylolisthesis associated with severe degenerative disc disease." AR 288, 295. After reviewing the imaging, Dr. McCombs determined that Plaintiff was "not a candidate for any type of operative intervention" and that he "will focus on pain management." AR 294.

Plaintiff returned to Dr. McCombs on May 7, 2012 after a three-day episode of severe pain and numbness of her right arm and leg. AR 296. Plaintiff's visit took place weeks after the episode and the severe pain had diminished prior to her visit. *Id*. Dr. McCombs' examination revealed "some slight weakness in her right hand," but no other focal deficits. *Id.* Dr. McCombs ordered head and cervical spine MRIs, which showed no abnormal conditions. AR 298-299, 301. Dr. McCombs remarked that he had "no good explanation of this transient event and will recommend a follow-up visit if it should occur in the future." AR 301.

Dr. McCombs next saw Plaintiff on January 7, 2014, approximately 18 months after her transient pain incident. AR 302. There is no indication of what prompted the visit or what was discussed. *See id.* The record only contains a generic notation that Plaintiff suffers from "lumbar disc disease which can occasionally flare up and cause pain." *Id.* One month later, on February 11, 2014, Dr. McCombs provided Plaintiff with a letter restricting her work schedule by shifting her start time 30 minutes earlier to alleviate her pain and increase her mental clarity. AR 303. There is no indication that Dr. McCombs saw and evaluated Plaintiff in the days leading up to the letter.[2] *See id.*

Plaintiff returned to Dr. McCombs on June 8, 2016, approximately two and a half years after her last evaluation. AR 521. Plaintiff complained of pain in her lower back and down both lower extremities that had increased over time. *Id.* Dr. McCombs found that Plaintiff's "exam is

---

[2] The undersigned presumes that the letter was written based on Dr. McCombs' previous experience with Plaintiff and her symptoms.

notable for pain with hyperextension of her back and lateral pelvic tilt in either direction…[s]he is really improving with forward flexion…[s]he has some patchy central loss of both lower extremities…[s]he has diminished knee and ankle jerks bilaterally…[n]o motor deficits noted on exam." AR 522. Dr. McCombs also reviewed a July 22, 2015 myelogram taken by her orthopedist, Dr. Robert W. Lowe, III, which revealed "[p]ostsurgical change of previous midline laminectomy and posterior lateral transpedicular stabilization from L4 through S1…[n]o hardware complication or acute osseous abnormality…[g]rade 2 anterolisthesis of L5 upon S1 with associated DDD/spondylosis at the L5/S1 level…[t]here is bilateral L5 foraminal stenosis of at least moderate degree at L5/S1." AR 530-531. Dr. McCombs believed that an updated myelogram was necessary to further evaluate Plaintiff's conditions. AR 522. Due to purported financial difficulties, Plaintiff did not obtain the myelogram until March 24, 2017. AR 570, 573.

After Plaintiff's June 2016 visit, Dr. McCombs filled out a form Medical Source Statement from a disability law office. AR 518-520. The statement, dated June 16, 2016, indicated that Plaintiff suffered from back and lower extremity impairments that limited her functional capacity such that she could not sit, stand, or walk for more than two hours each during a workday and that she would need to lie down for 30 minutes three times per day. *Id.* The statement also indicated that Plaintiff could not sit more than 15 minutes at time, stand for 20 minutes at time, or walk for 15 minutes at a time. *Id.* The statement listed only "lumbar myelogram" as support for the opinion. *Id.* Dr. McCombs additionally affirmed the following two statements provided in the form: "[o]bjective evidence supporting my opinions exists in my treatment notes" and "[m]y opinion is supported by taking proper medical history, physical exams, and clinical observations, although the record of such is sufficient to support my opinion." *Id.*

11

Dr. McCombs next saw Plaintiff on March 15, 2017, when he again recommended an updated myelogram to evaluate Plaintiff's condition. AR 569-570. The updated myelogram was taken on March 24, 2017 and revealed "[p]ostoperative changes of L4-S1 posterior fusion…[a]t least grade 2 anterolisthesis of L5-S1…[n]o evidence of acute hardware complication, acute abnormality or significant central canal stenosis." AR 574. The accompanying CT scan revealed "[n]o appreciable change compared to prior myelogram of 7/22/15…[p]atient is post L4 and L5 wide laminectomies with posterior fusion of L4-S1 without interval change in borderline grade 2-3 spondylolisthesis of L5 on S1 of 1.5 cm (50 percent)…[t]his results in fairly severe bilateral foraminal stenosis which appears grossly unchanged…." AR 573. The accompanying x-ray revealed "[g]rade 2 anterolisthesis L5 on S1 with near complete loss of disc space and mild spondylosis." AR 574. As a result, Dr. McCombs again recommended an epidural steroid injection. AR 576. With this visit, the medical record closes.

The so-called "treating physician rule" requires the ALJ to accord controlling weight to the opinion of a treating physician if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[3] Even if it is not accorded controlling weight, the ALJ must still evaluate the opinion based on several factors that include the length, frequency, nature, and extent of the treatment relationship, and the degree to which the opinion is consistent with the record as a whole and supported by relevant evidence. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). The ALJ's explanation for such weight allocation must include reasons that are "supported by the evidence in the case record

---

[3] The treating physician rule has been rescinded, *see* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017), but was in effect at the time of Plaintiff's application.

and ... sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion[.]" *Id.* This explanation must include "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers" the basis for his determination. *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000 (6th Cir. 2011)).

In the instant case, the ALJ gave little weight to the medical opinion of Dr. McCombs and provided three reasons to support his evaluation of the opinion. *Id.* First, the ALJ contends that Dr. McCombs' opinion "fails to identify any abnormal medical findings supporting his opinions." *Id.* Second, the ALJ writes that when Dr. McCombs provided his opinion, "he had seen the claimant only once, which was on June 8, 2016, since February 23, 2009." *Id.* Third, the ALJ asserts that when Dr. McCombs "saw the claimant on June 6, 2016, he determined that a lumbar myelogram and a post-myelogram CT were needed to evaluate her condition…[t]hose studies were not obtained until March 24, 2017, and they revealed no significant abnormalities other than post-surgical changes." *Id.*

Regarding the ALJ's first reason, Plaintiff contends that Dr. McCombs checked the box indicating that the opinion was supported by his treatment notes and that Dr. McCombs identified "lumbar myelogram" as support for his lift/carry restrictions. *See* Docket No. 18 at 9. Therefore, Plaintiff argues that the ALJ's determination that Dr. McCombs' opinion failed to identify any abnormal medical findings was incorrect. *See id.* The Commissioner notes, however, that the myelogram reviewed by Dr. McCombs neither correlated to specific motor deficits nor specifically supported the proffered lifting limitations. *See* Docket No. 19 at 10.

The ALJ's reasoning that Dr. McCombs' opinion failed to identify any abnormal medical findings to support his opinion is backed by substantial evidence. A medical opinion must provide

some reasonable support for the opinion. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at \*2. The Sixth Circuit has "declined to give significant weight to rudimentary indications that lack an accompanying explanation." *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016). The Sixth Circuit has further noted that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993)). Here, Dr. McCombs' failure to provide any meaningful explanation for the recommended limitations detracts from his conclusions. *See* 20 C.F.R. § 1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Even if the referenced lumbar myelogram and the medical record are considered, there is no analysis in the diagnostic report or in the clinical examination that link any findings to the limitations provided by Dr. McCombs as to weights lifted and carried. *See* AR 521-523, 530-531. The lack of support in Dr. McCombs' opinion thus constitutes a "good reason" to accord his medical opinion little weight.

As for the ALJ's second reason, Plaintiff contends that the ALJ was incorrect in stating that Dr. McCombs had only seen her on February 23, 2009 and June 8, 2016. *See* Docket No. 18 at 10. Plaintiff states that she saw Dr. McCombs several times in the interim between 2009 and 2016. *Id.* The Commissioner tacitly acknowledges that the ALJ erred in his statement of Plaintiff's treatment record, citing visits in 2011 and 2012. *See* Docket No. 19 at 11. The Commissioner argues that including the omitted visits does not take away from the ALJ's reasoning because Dr. McCombs still only saw Plaintiff sporadically. *Id.* at 11-12.

The undersigned finds that the ALJ's phrasing, though not a model of accuracy, does not constitute reversible error. The record supports just two visits occurring on August 8, 2011 and May 7, 2012 in addition to those cited by the ALJ. AR 295-296. A miscellaneous note appears in

14

Plaintiff's file for January 7, 2014 and a letter detailing work restrictions appears in the file for February 11, 2014, but there is no indication that Dr. McCombs saw her on either occasion. AR 302-303. Therefore, the record supports only four visits over a seven-year period.

While the ALJ did err in tallying the treatment dates, such error is harmless. Two additional visits over a seven-year period do not change the ultimate finding that Dr. McCombs' treatment of Plaintiff was intermittent and that such frequency should weigh against his opinion. This is particularly true given that courts in this circuit have held that in some circumstances, even five visits with a provider may be insufficient to establish the requisite ongoing treating relationship. *See Luteyn v. Comm'r of Soc. Sec.,* 528 F. Supp. 2d 739, 743 (W.D. Mich. 2007) (citing cases). The reasoning behind the weight accorded by the ALJ is supported by substantial evidence of the treatment dates in Plaintiff's medical record. The infrequency of treatment by Dr. McCombs during the relevant timeframe constitutes a "good reason" to accord his medical opinion little weight as do the long intervals between the treatments. *See* 20 C.F.R. § 404.1527(c)(2)(ii)("[T]he more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

With regard to the ALJ's third reason, Plaintiff contends that the ALJ was incorrect in stating that the 2017 myelogram revealed no significant abnormalities other than post-surgical changes. Docket No. 18 at 10. Plaintiff emphasizes that the myelogram showed that L5-S1 demonstrated borderline grade 2-3 spondylolisthesis and fairly severe bilateral neural foraminal stenosis. *Id.* The Commissioner argues that the ALJ was correct that the 2017 myelogram studies revealed no significant abnormalities other than post-surgical changes, that the imaging was unchanged from the 2015 studies, and that Dr. McCombs' examination of Plaintiff revealed no motor deficits. *See* Docket No. 19 at 10.

15

The ALJ's reasoning that the 2017 myelogram studies revealed no significant abnormalities other than post-surgical changes is supported by substantial evidence. The two abnormalities cited by Plaintiff from the 2017 studies, spondylolisthesis and bilateral neural foraminal stenosis, were present in the 2015 studies as well as the 2009 study. AR 282, 531. The 2009 study attributed Plaintiff's spondylosis and stenosis to "spondylitic/postoperative sequelae," mirroring the ALJ's categorization of the conditions as abnormalities related to post-surgical changes. *See* AR 282. There is no discussion in Dr. McCombs' opinion or treatment notes as to how or if Plaintiff's condition changed between 2009 and 2016 with relation to those findings.[4] Further, despite reviewing the 2015 myelogram study during Plaintiff's June 2016 visit, Dr. McCombs does not discuss its results as they relate to her symptoms and does not list the study as a source of any treatment plan other than to say updated imaging is needed to evaluate the anatomy of the situation. *See* AR 521-523.

Finally, contrary to the limitations set forth in his opinion, Dr. McCombs found that although Plaintiff reported pain he could find no motor deficits during the clinical examination conducted just prior to the issuance of his opinion. *See* AR 522. Such factors bolster the ALJ's decision to accord little weight to Dr. McCombs' opinion. *See Cutlip v. Sec'y of Health & Human Serv.,* 25 F.3d 284, 287 (6th Cir. 1994) (noting that a treating physician's opinion is only accorded great weight when it "supported by sufficient clinical findings and [is] consistent with the evidence") (internal citation omitted). The absence of significant abnormalities other than post-surgical changes in the 2017 myelogram without any further elaboration by Dr. McCombs

---

[4] Despite the two conditions' presence as early as 2009, Plaintiff continued to work without any limitations other than a 2014 minimal restriction of her work schedule until she quit working in 2015.

16

constitutes a "good reason" under 20 C.F.R. § 404.1527(c) to accord his medical opinion little weight.

The treating physician rule is "not a procrustean bed, requiring an arbitrary conformity at all times." *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 551 (6th Cir. 2010). If the ALJ's decision "permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion," the ALJ's failure to provide a robust explanation of the reasons for discounting the treating physician's opinion can be excused. *Id.* Here, the ALJ provided three reasons supported by substantial evidence to allow Plaintiff an understanding of his weight determination. As such, the ALJ did not err in his weight determination for Dr. McCombs' medical opinion.

### 2. The opinion evidence of Dr. Lloyd Huang

Plaintiff next contends that the ALJ failed to correctly consider and weigh the opinion of Dr. Lloyd Huang, a consultative examiner. Docket No. 18 at 11. Plaintiff's argument focuses on the ALJ's decision to accord Dr. Huang's manipulative limitations little weight despite his diagnosis of carpal tunnel syndrome. *See id.* Plaintiff briefly mentions the great weight the ALJ afforded Dr. Huang's opinion that Plaintiff needed to change position every 90 minutes and the postural limitations recommended by Dr. Huang, but provides no further discussion of either issue. *See* Docket No. 18 at 11. As the potential arguments related to those limitations are undeveloped, an appropriate review focuses solely on Dr. Huang's manipulative limitations. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

Plaintiff was examined by Dr. Huang on January 5, 2016. AR 494. Dr. Huang noted that she had a normal range of motion of the shoulders, elbows and wrists. AR 503. For Plaintiff's hands, Dr. Huang noted that the right hand had a positive Tinel's sign, an inability to completely oppose the thumb and fifth digit, and a handgrip strength of 75%. *Id.* Dr. Huang also noted that Plaintiff had normal range of motion for the left wrist, normal handgrips, and normal opposition from the fifth digit. *Id.*

Following the examination, Dr. Huang issued a medical opinion detailing Plaintiff's ability to do work-related activities. AR 495-504. Dr. Huang determined that Plaintiff's right hand, her dominant hand, could be used occasionally to reach overhead and push/pull and used frequently for handling, fingering, feeling, and other types of reaching.[5] AR 497. Dr. Huang determined that her left hand could be used occasionally to reach overhead, frequently to push pull and for other types of reaching, and continuously for handling, fingering, and feeling. *Id.* Dr. Huang further opined that Plaintiff could sort, handle, and use paper/files. AR 500.

The ALJ gave little weight to the manipulative limitations set forth in Dr. Huang's opinion. AR 20. The ALJ acknowledged the positive Tinel's sign and reduced handgrip strength and further recognized testing by other doctors showing carpal tunnel syndrome. AR 19. The ALJ also recognized the carpal tunnel syndrome findings in the medical record support greater exertional limitations. AR 20. Having already considered those factors, the ALJ assigned little weight to Dr. Huang's manipulative limitations assessment based on their inconsistency with Dr. Huang's clinical findings, which included full range of motion in the wrists. *Id.* Though not directly cited by the ALJ, the limitations were also contrary to other medical opinions in the record from

---

[5] In the context of the opinion, occasionally means up to one-third of the time, frequently means one-third to two-thirds of the time, and continuously means more than two-thirds of the time. AR 495.

Dr. McCombs and Dr. Settle that Plaintiff could frequently use her hands during a workday. *See* AR 68, 518. A finding that the opinion is inconsistent with the record is allowed under the factors. *See Bowman v. Comm'r of Soc. Sec., 683 F. App'x* 367, 375 (6th Cir. 2017) (holding that ALJ properly discounted consultative examiner's opinion because it was inconsistent with his own examination report and the record as a whole). All the ALJ was required to do was acknowledge that Dr. Huang's opinion contradicted the ALJ's RFC finding and explain why he did not include the consultative examiner's limitations, which he did. *See Puckett v. Colvin*, No. 3:13-cv-01486, 2014 WL 1584166, at *9 (N.D. Ohio Apr. 21, 2014). "The Social Security Act instructs that the ALJ – not a physician – ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 432(d)(5)(B)). Here, the ALJ's finding falls within the zone of choice afforded to the ALJ. *See Blakley*, 581 F.3d at 406.

Plaintiff further argues that the ALJ erred by excluding upper extremity restrictions in his hypothetical questions to the Vocational Expert. *See* Docket No. 18 at 11-12. Plaintiff asserts that had the restrictions been put before the Vocational Expert, the evidence might have shown that Plaintiff's past relevant work would be precluded. *Id.* at 12. Plaintiff's argument is without merit. In fashioning the hypothetical questions posed to the Vocational Expert, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Here, the ALJ did not find Dr. Huang's manipulative limitations to be credible based on their inconsistency with his clinical findings. AR 20. Therefore, he was not required to incorporate them into his questions. Additionally, there is little merit in Plaintiff's argument because her attorney had a full opportunity to cross-examine the Vocational Expert, but failed to ask a single question related to Plaintiff's upper extremities. *See* AR 47-48;

*see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (rejecting an argument that the ALJ erred by not interrogating the vocational expert where "[the Claimant] was afforded a full opportunity to cross-examine [the vocational expert]"). For these and the above reasons, the ALJ did not err in his assessment of Dr. Huang's medical opinion.

### 3. Plaintiff's credibility.

Plaintiff contends that the ALJ failed to properly consider her statements about her limitations and how they support the opinions of her treating and examining sources. *See* Docket No. 18 at 12. Plaintiff also claims that the ALJ erred in discounted her credibility by referencing the infrequency of her office visits and conservative nature of her treatment. *Id* at 13.

"Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005). When evaluating a claimant's subjective complaints, the ALJ must look to see if the claimant has a medical impairment that could reasonably be expected to produce the pain alleged and consider all other evidence that would lead to a finding of disability. 20 C.F.R. § 404.1529(a). Notably, the Sixth Circuit has indicated that a reviewing court "should be particularly reluctant to substitute its judgment of the credibility of the claimant for that of the ALJ, since the ALJ has seen the claimant in the flesh and has had the opportunity to observe his demeanor." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841 (6th Cir. 1991) (citing *Gooch v. Sec'y of Health & Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987)) (per curiam), *cert. denied,* 484 U.S. 1075 (1988) (internal quotations omitted). In fact, the court "may not disturb [a credibility determination] absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). However, the ALJ's assessment "must be supported by substantial evidence." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 19. In reaching this conclusion, the ALJ compared her testimony with her medical record. The ALJ found that Plaintiff's frequency and extent of examination and treatment weighed against her disabling allegations, as was appropriate. *See* Soc. Sec. Rul. 16-3p, 2016 WL 1119029, at *8 ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record").

Substantial evidence in the record supports the ALJ's decision. Plaintiff was examined by Dr. McCombs four times during the relevant period – on February 23, 2009, August 8, 2011, May 7, 2012, and June 8, 2016. Given the record as a whole, Plaintiff's infrequent medical care detracts from her credibility on her subjective perception of the intensity, persistence, and limiting effects of her alleged symptoms.

In addition to frequency of care, the ALJ also took into account the extent of Plaintiff's care. AR 20. For both her back and her wrist, Plaintiff elected to pursue conservative treatment choices. Plaintiff declined the epidural steroid injections for her back recommended by Dr. Lowe and Dr. McCombs. *See* AR 493, 576. According to Plaintiff, she "did not see the need of getting the injection." AR 37. Plaintiff also declined wrist injections for her carpel tunnel syndrome and chose to "start very conservatively with a wrist brace." AR 19-20. The Sixth Circuit has held that conservative treatment tends to support an ALJ's finding that a claimant's alleged impairment is not disabling. *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (holding

that "conservative treatment approach suggests the absence of a disabling condition"). Plaintiff contends that her religious objection to blood transfusion would potentially complicate any less conservative surgical procedure. *See* Docket No. 18 at 13. However, the record shows that Plaintiff was able to have a lumbar fusion surgery without worry for her alleged religious objection.[6] *See* AR 251. Further, Plaintiff makes no argument that the prescribed epidural steroid injections and wrist injections would necessitate a blood transfusion. The undersigned also notes that Plaintiff did not testify that she had a religious objection to those injections, only that she didn't think they would help. *See* AR 37. Thus, any argument related to the religious objection is without merit.

Plaintiff finally argues that her complaints and statements about her limitations were "fairly" consistent with the limitations assigned by Dr. McCombs. Docket No. 18 at 15. The ALJ determined that the opinion of Dr. McCombs was entitled to little weight. AR 20. Thus, Dr. McCombs' opinion does little to bolster Plaintiff's credibility. Further, as addressed above, the credibility of Plaintiff's complaints is belied by her decision to accept very conservative treatment or no treatment at all. An ALJ's credibility determination regarding a claimant's subjective complaint should be "affirm[ed] if the ALJ's determination is reasonable and supported by substantial evidence." *Hernandez*, 644 F. App'x at 476 (6th Cir. 2016) (citing *Rogers*, 486 F.3d at 249) (internal quotation marks omitted). Here, the ALJ's credibility determination was both reasonable and supported by substantial evidence.

The Sixth Circuit has held that ALJ's credibility determination should not be disturbed without a "compelling reason," and has even stated that such a determination is essentially

---

[6] Many surgeries do not have a likelihood that a blood transfusion will be needed. *See, e.g.,* AR 251.

"unchallengeable." *Hernandez*, 644 F. App'x at 476 (internal citations omitted). Plaintiff's brief provides no such compelling reason. The court therefore rejects this assertion of error.

## IV. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record, Docket No. 17, be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge